VAUGHAN, Appellant,

v.

VAUGHAN, Appellee.

[Cite as *Vaughan v. Vaughan* (1998), 131 Ohio App.3d 364.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 97CA2343.

Decided Nov. 13, 1998.

*James K. Cutright,* for appellant.

*Thomas M. Spetnagel,* for appellee.

---

PETER B. ABELE, Judge.

This is an appeal from a Ross County Common Pleas Court judgment denying Bruce Vaughan, plaintiff below and appellant herein, relief from a post-divorce decree judgment entered in favor of Martha Vaughan, defendant below and appellee herein.

Appellant assigns the following error for our review:

"The trial court erred when it overruled appellant's Civ.R. 60(B) motion."

On September 19, 1989, the parties divorced. The parties' divorce decree awarded appellee a one-half interest in the value of appellant's Police and Fireman's Disability Pension Fund of Ohio ("PFDPF") and in appellant's Ohio Public Employees' Deferred Compensation Program. The court further specified that the award was contingent upon appellee surviving appellant and upon appellee refraining from remarrying.

On August 23, 1990, appellant filed a bankruptcy petition and listed appellee as an unsecured creditor with a spousal support claim. On January 17, 1991, the bankruptcy court granted appellant a discharge in bankruptcy.

On March 31, 1997, appellee filed, pursuant to Civ.R. 75(I), a motion for enforcement of property division, requesting the trial court to issue an order "requiring Plaintiff, Bruce G. Vaughan, to file and maintain a designation of Martha A. Vaughan as a beneficiary of his accounts held with the state retirement system to effectuate the Court's previous division of that marital property. Defendant further moves the Court for an Order requiring Bruce G. Vaughan to pay Martha G. Vaughan her previously-awarded share of the funds held in those plans at the time that he commences receipt of those benefits."

On April 9, 1997, the trial court issued a judgment entry requiring appellant to execute and file with the state all forms and documents necessary to designate and maintain appellee as his beneficiary in fifty percent of the benefits accrued as of the date of the divorce in appellant's PFDPF and in appellant's deferred compensation program.

On May 1, 1997, appellant filed a motion for relief from judgment, pursuant to Civ.R. 60(B)(1), (4), and (5), requesting relief from the trial court's April 9, 1997 judgment. In his motion, appellant asserted that he did not have knowledge of or an adequate opportunity to respond to appellee's March 31, 1997 motion. Appellant argued that if he had been given notice and an opportunity to respond to appellee's March 31, 1997 motion, he would have asserted a meritorious defense. Specifically, appellant asserted that the trial court's judgment is "impossible to implement" because the court cannot order a division of a beneficiary's PFDPF account. Appellant also argued that his obligations to appellee with respect to the PFDPF and the deferred compensation account were in the nature of a property division, not in the nature of spousal support. Thus, appellant asserted that the January 17, 1991 bankruptcy discharge relieved him of his obligations to appellee.

After holding a hearing regarding appellant's motion for relief from judgment, the trial court, on September 3, 1997, overruled appellant's request for relief from the court's April 9, 1997 judgment. The trial court found that appellant failed to establish that he would have a meritorious defense to present if the trial court granted the requested relief.

First, the trial court rejected appellant's argument that the trial court's April 9, 1997 judgment is "impossible to implement." The trial court, relying upon *Erb v. Erb* (1996), 75 Ohio St.3d 18, 661 N.E.2d 175; *Holcomb v. Holcomb* (1990), 44 Ohio St.3d 128, 541 N.E.2d 597; and R.C. 3105.171(A)(3)(a)(i), noted that pension or retirement benefits accumulated during the course of a marriage constitute marital assets and are subject to property division in a divorce proceeding. The

trial court further noted that a trial court, while lacking authority to order an immediate, outright division of an individual's PFDPF, may divide an individual's interest in his pension or retirement benefits accumulated during the course of the marriage. The trial court additionally found that appellant's interest in the PFDPF and appellant's interest in the deferred compensation fund did not form part of appellant's bankruptcy estate.

Second, the trial court disagreed with appellant's assertion that appellant's January 17, 1991 bankruptcy discharge extinguished his obligation to appellee with respect to appellant's pension and deferred compensation funds. The trial court found that appellee's interests in appellant's pension and deferred compensation funds are "in the nature of" a support obligation, not "in the nature of" a property division. The court noted that appellee's interest in appellant's PFDPF and in appellant's deferred compensation fund terminate if appellee remarries or predeceases appellant. The trial court reasoned that this contingency evidences the parties' intent that appellee's interests represent a support obligation. If appellee remarries or predeceases appellant, she will no longer require support. Thus, the trial court found that appellant's bankruptcy discharge did not discharge his obligation to appellee.

Consequently, the trial court found that appellant would not have a meritorious defense to present if the trial court granted appellant's Civ.R. 60(B) motion for relief from judgment.

Appellant filed a timely notice of appeal from the trial court's judgment overruling his motion for relief from judgment.

In his sole assignment of error, appellant asserts that the trial court erred by overruling his Civ.R. 60(B) motion for relief from judgment. In particular, appellant contends that the trial court erred by determining that appellant failed to establish a meritorious defense.

In *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph two of the syllabus, the court set forth the requirements of a Civ.R. 60(B) motion[1]:

"To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time."

---

1. Civ.R. 60(B) provides relief from a final judgment for the following reasons: "(1) mistake, inadvertence, surprise or excusable neglect; * * * (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."

■ If the movant fails to satisfy any of the three *GTE* requirements, the trial court should overrule the motion. *Volodkevich v. Volodkevich* (1988), 35 Ohio St.3d 152, 153, 518 N.E.2d 1208, 1210; *Svoboda v. Brunswick* (1983), 6 Ohio St.3d 348, 351, 6 OBR 403, 405–406, 453 N.E.2d 648, 651. In the case at bar, the parties apparently dispute only the first of the *GTE* requirements—whether appellant would have a meritorious defense to present if the trial court granted relief.

Appellant raises two issues in support of his argument that he would have presented a meritorious defense if the trial court had granted his requested relief. Appellant first asserts that the trial court's order "is impossible to implement given the nature of his pension plan." Appellant argues that neither his PFDPF nor his deferred compensation plan are subject to division. Second, appellant contends that his January 17, 1991 bankruptcy discharge "discharge[d] his obligations to [appellee] in that the division of his pension and deferred compensation was in the nature of property division and not spousal support, and therefore dischargeable under 11 U.S.C. 727." We will address appellant's assertions in turn.

In support of his first argument, appellant argues that pursuant to *Erb, supra,* the trial court's order is "unenforceable since a domestic relations court cannot order a division of the beneficiary's account in the PFDPF." Appellant contends that the trial court lacked the authority to divide the pension and deferred compensation funds and that the trial court should have made a property division award "equal in value to the present value of the spouse's interest in the plan."

Appellee recognizes that *Erb* held that a trial court could not order an immediate, outright division of PFDPF benefits to a nonemployee spouse prior to the participant's retirement.[2] Appellee asserts, however, that trial courts possess the authority to divide a party's interest in pension and retirement benefits, and that benefits accumulated during the course of a marriage constitute marital assets subject to property division in a divorce proceeding.[3]

---

**2.** As the *Erb* court stated:

" 'As a creature of statute, the PFDPF has no authority beyond that which is expressly or impliedly conferred by statute.' *Dreger v. Pub. Emp. Retirement Sys.* (1987), 34 Ohio St.3d 17, 20–21, 516 N.E.2d 214, 217. R.C. Chapter 742 does not expressly confer upon the PFDPF the authority to pay retirement benefits until the employee has actually retired." *Id.,* 75 Ohio St.3d at 22, 661 N.E.2d at 179.

**3.** Additionally, appellee points out that pursuant to R.C. 145.75 and 3105.171, state deferred compensation benefits are subject to a marital property division in a divorce action, provided that any attachment of funds does not occur prior to the time that the participant begins receiving benefits.

Appellee further contends that a trial court possesses continuing jurisdiction to order a participant in a state retirement program to pay a former spouse a share of those benefits when the participant begins to receive retirement benefits. Appellee contends that the trial court's order that appellant designate appellee as a beneficiary of appellant's pension and deferred compensation funds merely effectuates its prior award to appellee.

■ In the case *sub judice*, we agree with the trial court and appellee that a court cannot, prior to the participant's retirement, order an immediate, outright division of PFDPF or deferred compensation benefits. A court may, however, equitably divide an individual's pension and deferred compensation funds during a divorce proceeding and issue orders incidental to accomplishing the division.[4]

In its September 3, 1997 decision, the court stated, in pertinent part:

"Plaintiff initially asserts that the Court order dividing Plaintiff's pension and deferred compensation is unenforceable citing *Erb* * * *. Plaintiff's reliance on *Erb* is misplaced. *Erb* held that a Court may not order an immediate outright division of the Police and Firemen's Pension Fund benefits to a non-employee spouse prior to the participant's retirement. Ohio case law and statutory law have recognized the right to divide a person's pension plan. Pension or retirement benefits accumulated during the course of a marriage are marital assets subject to property division in a divorce action. *Holcomb v. Holcomb* (1990), 44 Ohio St.3d 128, 541 N.E.2d 597; ORC Section 3105.171(A)(3)(a)(i)."

We agree with the trial court's reasoning and interpretation of *Erb*. In *Erb*, the court held that trial courts cannot require the PFDPF to *pay* pension benefits directly to a nonemployee spouse prior to the participant's retirement. *Id.*, 75 Ohio St.3d at 22, 661 N.E.2d at 179 ("To require the PFDPF to pay * * * the non-employee spouse[ ] her share of benefits before * * * the employee-spouse retires would be contrary to the clear language of [state statutory law]."). The *Erb* court noted:

---

4. As the court explained in *Brannon v. Brannon* (June 27, 1997), Trumbull App. No. 96–T–5572, unreported, 1997 WL 401537:

"Courts have utilized several different methods to divide retirement benefits equitably, such as, (1) withdrawing the entire employee's share from the fund; (2) offsetting the present value of the nonemployee spouse's equitable share with other marital property; (3) offsetting the present value of the nonemployee's equitable share with installment payments; and (4) ordering that a percentage of the future benefit[s] be paid either directly from the fund or from the employee spouse to the nonemployee spouse, if and when the pension matures. [*Smith v. Smith* (1993), 91 Ohio App.3d 248, 253, 632 N.E.2d 555, 559.] See, also, *Sprankle v. Sprankle* (1993), 87 Ohio App.3d 129, 132, 621 N.E.2d 1310. However, the court is not permitted to violate the terms of the plan when fashioning its property division. *Hoyt* [*v. Hoyt* (1990), 53 Ohio St.3d 177, 181, 559 N.E.2d 1292, 1297]."

"In dividing benefits that are vested and unmatured, *Hoyt* provided trial courts with the option to reserve jurisdiction and either determine the parties' proportionate shares at the time of divorce or determine proportionality when the benefits become vested and matured. 53 Ohio St.3d at 182, 559 N.E.2d at 1297. The options chosen, however, must conform to the terms of the pension plan. See *id.* at 181, 559 N.E.2d at 1297." *Id.,* 75 Ohio St.3d at 21, 661 N.E.2d at 179.

 In the case at bar, the trial court's judgment ordering appellant to execute and file all forms necessary to designate and maintain appellee as his beneficiary in one-half of his pension and as his beneficiary in one-half of his retirement fund did not effect an immediate, outright division of appellant's pension and retirement funds. Rather, the trial court's judgment merely requires appellant to ensure that appellee will receive her interest in appellant's pension and retirement funds when the funds mature. As the court's April 9, 1997 entry clearly reflects, appellee will not receive any interest in appellant's benefits until appellant "commences receipt of those funds." Thus, we find appellant's argument that the trial court's order "is impossible to implement" unpersuasive.

Appellant's second argument asserts that assuming, *arguendo,* the trial court's April 9, 1997 order is valid and enforceable, his January 17, 1991 discharge in bankruptcy extinguished his obligations to appellee because the pension and deferred compensation division was in the nature of a property division, not in the nature of spousal support. See Section 727, Title 11, U.S. Code. Appellant maintains that the parties' September 19, 1989 divorce decree (1) did not intend to create a support obligation and (2) did not use language normally associated with support obligations. To support his contention that the obligations are not spousal support obligations, appellant notes (1) that appellee's claim in bankruptcy was not a claim for "support" as Section 523(a)(5), Title 11, U.S. Code contemplates and (2) that the trial court's divorce decree specifically refrained from awarding any alimony or spousal support, and, thus, the trial court incorrectly interpreted the divorce decree as intending to create a spousal support obligation.

Appellee asserts that the pension and deferred compensation awards are in the nature of support and, thus, are nondischargeable in bankruptcy. Appellee further contends that appellant's bankruptcy discharge had no effect upon her interest in appellant's pension and retirement funds. Appellee asserts that upon the filing of the divorce decree, she became the equitable owner of one-half of appellant's pension and retirement funds and that her one-half interest in the funds formed no part of appellant's bankruptcy estate.

We first will address whether appellee's interest in appellant's pension and retirement fund is in the nature of support and, thus, nondischargeable in bankruptcy.

■ In general, a discharge in bankruptcy extinguishes a debtor's obligation to pay his outstanding debts. Section 727, Title 11, U.S.Code; *Mugrage v. Mugrage* (Mar. 24, 1998), Washington App. No. 96 CA 36, unreported, 1998 WL 191841. Not all outstanding debts, however, are subject to discharge. Section 727(b), Title 11, U.S.Code; *Rizzen v. Spaman* (1995), 106 Ohio App.3d 95, 102, 665 N.E.2d 283, 288. Section 523(a)(5)(B), Title 11, U.S.Code specifies the outstanding debts that are nondischargeable in bankruptcy:

"(a) A discharge under section 727 * * * of this title does not discharge an individual debtor from any debt—

"* * *

"(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

"* * *

"(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support."

"Accordingly, those debts that are actually in the nature of alimony, maintenance or support are not dischargeable in bankruptcy. In determining whether a specific obligation is actually in the nature of alimony, maintenance or support, state courts have concurrent jurisdiction with the bankruptcy courts." *Rizzen,* 106 Ohio App.3d at 103, 665 N.E.2d at 288; see, also, *Barnett v. Barnett* (1984), 9 Ohio St.3d 47, 49, 9 OBR 165, 166–167, 458 N.E.2d 834, 836–837; *Pearl v. Pearl* (1990), 69 Ohio App.3d 173, 177, 590 N.E.2d 315, 317; *Mugrage, supra.* "[I]n determining whether a debt meets the standard of Section 523(a)(5), federal law controls, guided in part by state law." *Rizzen,* 106 Ohio App.3d at 103, 665 N.E.2d at 288; see, also, *In re Calhoun* (C.A.6, 1983), 715 F.2d 1103, 1108; *Smith v. Smith* (1992), 81 Ohio App.3d 641, 643, 611 N.E.2d 987; *Mugrage.*

In *Calhoun,* the Sixth Circuit set forth the following analytical framework courts should employ when determining whether a certain debt, not specifically designated as alimony, maintenance, or support, is "actually in the nature of alimony, maintenance, or support." See *Fitzgerald v. Fitzgerald* (C.A.6, 1993), 9 F.3d 517, 520 (explaining *Calhoun* analysis). "First, the obligation constitutes support only if the state court or parties intended to create a support obligation." *Id.* at 520 (citing *Calhoun,* 715 F.2d at 1109–1110). If the parties did not intend to create a support obligation, "the inquiry ends there." *Calhoun,* 715 F.2d at 1109. If the court determines that the parties intended to create a support

obligation, the court then must ascertain whether "the obligation [has] the actual effect of providing necessary support." *Fitzgerald,* 9 F.3d at 520. Once the court determines that the parties intended to create a support obligation and that the obligation actually provides necessary support, "the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support." *Id.* If the court finds the amount "so unreasonable under traditional concepts of support," "the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law." *Id.*

Appellate review of a trial court's application of the *Calhoun* test presents a mixed question of law and fact. We review the factual findings for clear error, and we review the legal conclusions *de novo. Calhoun,* 715 F.2d at 1110–1111; *In re Perlin* (C.A.6, 1994), 30 F.3d 39, 40; *Ballinger v. Ballinger* (1995), 107 Ohio App.3d 358, 362, 668 N.E.2d 979, 981; *Mugrage, supra.* We will not disturb a trial court's factual findings as being clear error if the findings are supported by competent, credible evidence. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60; *Mugrage.*

In the case at bar, we agree with the trial court that at the time of the parties' divorce, the parties intended to create a support obligation by awarding appellee a one-half interest in appellant's pension and a one-half interest in appellant's deferred compensation. The divorce decree recited that appellee will be divested of her interest if she remarries or predeceases appellant. In other words, as the trial court stated, appellee's "interest [will] cease if she no longer required support." *Fitzgerald,* 9 F.3d at 521 ("[The alimony payments] were to end upon the wife's remarriage or death, another conventional restriction on alimony").

Furthermore, we believe that the obligation has the actual effect of providing necessary support. At the time of the divorce, appellee held a part-time job, earning a modest wage. In the divorce decree, the trial court awarded appellee a non-trivial sum of money. From our review of the divorce decree, we discern that the trial court found that appellee's wages and the cash property award provided appellee with a sufficient amount of support for a certain number of years. At the same time, we perceive that the trial court found that appellee would need additional means of support in future years, presumably at the time when appellant's pension and retirement funds matured.

Moreover, we do not believe that the amount of the obligation is so excessive as to be unreasonable under traditional concepts of support. Approximately nine months prior to the divorce, appellant's pension was valued at approximately $28,000, and appellant's deferred compensation fund amounted to $6,000. Awarding appellee a one-half interest in each of the funds as of the date

of their valuation amounts to approximately $17,000. Consequently, appellant's discharge in bankruptcy did not extinguish his obligation to appellee.

Moreover, we agree with the trial court that appellant's obligation to appellee did not constitute a debt. As the trial court recognized, in *Erb* the court noted the following with respect to the argument that a debtor-spouse's discharge in bankruptcy relieves him of the obligation to pay his former spouse the portion of the debtor-spouse's pension or retirement fund awarded to the former spouse in a divorce proceeding:

"It is true, as Wife contends, that should Husband file a petition in bankruptcy, his obligation to pay Wife directly as part of a property settlement in a divorce might not qualify as an exception to discharge under Section 523(a)(5) of the Bankruptcy Code. See, *e.g.*, *In re Wilson* (S.D.Ohio 1993), 158 B.R. 709, 712; Section 523(a)(5), Title 11, U.S.Code. However, Wife's separate property interest in Husband's pension would neither be a part of Husband's bankruptcy estate nor be subject to the jurisdiction of the bankruptcy courts. *Wilson*, 158 B.R. at 711. Thus, a discharge of Husband's obligation to pay Wife directly would not affect Wife's ownership interest in the pension itself. *Id.* at 712–13. Because Wife's interest would not be affected by a discharge and because Husband would remain subject to the contempt powers of the domestic relations court, Wife's interest would continue to be adequately protected." *Erb*, 75 Ohio St.3d at 22–23, 661 N.E.2d at 179, fn. 3.

The situation in the case at bar differs from the circumstances of the *Erb* case. In *Erb*, the divorce decree ordered the husband to pay his former spouse directly her share of his retirement funds. In the case at bar, the divorce decree does not require appellant to pay appellee directly any monies derived from his pension or retirement fund. Rather, the decree and subsequent order require appellant to maintain appellee as a beneficiary of a one-half interest in his pension and retirement funds. Neither the decree nor the subsequent order require appellant to pay appellee her share of the funds. Nonetheless, we find the implication of the passage clear. A discharge in bankruptcy does not extinguish a spouse's obligation to ensure that he carries out the steps necessary to maintain his former spouse as a beneficiary of his pension or retirement fund. As the *Wilson* court stated, the spouse's obligation in this situation does not constitute a debt owing to the former spouse:

"Despite the fact that the award to the plaintiff of one-half of the debtor's retirement fund was a property settlement, and not alimony or support, §523(a)(5) is not relevant to this portion of the state court decree. This portion of the property settlement, *i.e.*, the award of one-half of the marital asset, was made prior to the debtor's filing of a petition in bankruptcy and has therefore already

been executed by virtue of the state court decree. As a result, it is clearly not a 'debt' owing to the plaintiff on the date the debtor filed bankruptcy. A state court's award of one-half of a debtor's retirement fund to a former spouse is no different in principle than awarding the marital residence to a former spouse * * *." (Footnote omitted.) *In re Wilson* (S.D. Ohio 1993), 158 B.R. 709, 712.

Accordingly, we disagree with appellant that his bankruptcy discharged his obligation to ensure that appellee receives, upon maturity, her previously awarded share of appellant's funds. The trial court's April 9, 1997 order may be viewed, to use the analogy of the *Wilson* court, as nothing more than an order requiring appellant to ensure that he took all steps necessary to ensure that appellee received full title to the marital residence.

Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

HARSHA and KLINE, JJ., concur.