OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiff-Appellant, Vicki Loveday, appeals the decision of the Belmont County Court of Common Pleas which overruled her objections to a magistrate's decision and denied her motions to hold Defendant-Appellee, Gary Loveday, in contempt and to modify the award of spousal support. That decision also overruled Gary's motion to hold Vicki in contempt. The trial court found Vicki's failure to challenge the dischargeability of certain marital debts in Gary's bankruptcy proceedings prevented her from challenging the dischargeability of those debts in a later proceeding in state court. The issue before us is whether the trial court's decision regarding the dischargeability of that debt is correct. We conclude that Vicki's failure to challenge the dischargeability of the marital debt during Gary's bankruptcy proceedings does not prevent her from challenging the dischargeability of that debt now as debts in the nature of spousal support are not automatically discharged in bankruptcy. Therefore, the trial court's decision is reversed and this case is remanded for further proceedings.
 {¶ 2} The parties filed an agreed statement of the record in accordance with App.R. 9(D). The following facts are gleaned from that agreed statement of the record. Gary and Vicki were divorced on October 16, 1998. They had been separated since January 1, 1993. Two children, twins, were born of the marriage. Pursuant to the terms of their divorce decree, Vicki was named the residential parent of the children and Gary was ordered to pay child support. Gary was also ordered to pay spousal support to Vicki for eight years. The trial court awarded possession and use of the marital residence to Vicki until May 28, 2008, when the children turned 21 years old. It also ordered Gary to pay all marital debts, including the two mortgages on the home.
 {¶ 3} On May 17, 2000, Gary filed a voluntary petition for Chapter 7 bankruptcy. In that petition, he listed the mortgagors as creditors and Vicki as a creditor holding an unsecured, non-priority claim. Vicki was properly served with notice of the bankruptcy petition, but never entered an appearance in the bankruptcy proceedings. On September 5, 2000, Gary was granted a general discharge from bankruptcy.
 {¶ 4} At the conclusion of the bankruptcy proceedings, the bank resumed a foreclosure action against Vicki and Gary due to Gary's failure to make the mortgage payments for the marital residence. Judgment was granted to the bank and the marital residence was sold at auction.
 {¶ 5} On November 17, 2000, Vicki moved the trial court to hold Gary in contempt for his failure to pay the marital debts relating to the marital residence, including the mortgage and real estate taxes. A magistrate found the trial court was divested of jurisdiction to enforce that portion of the decree due to the discharge of that debt in bankruptcy. It also found that even if it had jurisdiction, that the debt was not in the nature of support and, therefore, was dischargeable under bankruptcy law. Vicki filed objections to this decision and the trial court overruled those objections. The trial court agreed with the magistrate's decision that it did not have jurisdiction to enforce that portion of the decree, but refrained from ruling on whether it thought the debt was dischargeable under bankruptcy law. It is from this judgment that Vicki timely appeals.
 {¶ 6} Vicki asserts one assignment of error:
 {¶ 7} "The court erred in holding that a post-decree action to enforce the obligation to pay the real estate mortgages on the former marital home is barred where the movant does not enter an appearance or litigate the issue of dischargeability in the prior, Chapter 7 bankruptcy action of the obligor."
 {¶ 8} Vicki challenges both the trial court's conclusion that it did not have jurisdiction to determine whether the debt was dischargeable and the magistrate's decision that even if it reached the merits of her motion, that the debt was dischargeable. According to Vicki, the trial court's decision was incorrect because the trial court and the bankruptcy court have concurrent jurisdiction to determine whether a debt is in the nature of a support obligation and, therefore, is not dischargeable in bankruptcy. She argues the bankruptcy court never decided this issue and, therefore, her current argument should not be denied on the basis of res judicata.
 {¶ 9} Gary does not dispute that the bankruptcy court and the trial court have concurrent jurisdiction to determine whether a debt is in the nature of a support obligation. Instead, he first argues that Vicki failed to file a complaint to determine the dischargeability of that debt during the bankruptcy proceedings and, therefore, it is too late to challenge the debt's dischargeability now. He also argues that since the bankruptcy court was the first court to exercise its concurrent jurisdiction over this issue, it has acquired exclusive jurisdiction over that issue, and that Vicki's failure to challenge the dischargeability of that debt during the bankruptcy proceedings means the issue is res judicata.
 {¶ 10} Many types of debts are discharged in bankruptcy. See11 U.S.C. § 727. However, a debt "to a spouse, former spouse, or a child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record" is not discharged in bankruptcy.11 U.S.C. § 523(a)(5). This includes any liability which "is actually in the nature of alimony, maintenance, or support."11 U.S.C. § 523(a)(5)(B). In some cases, there is a dispute as to whether a particular debt owed to a former spouse is "actually in the nature of" alimony, maintenance, or support. As both parties recognize, state courts have concurrent jurisdiction with bankruptcy courts to determine whether a particular obligation is a support obligation and, therefore, whether it is dischargeable in bankruptcy. Barnett v. Barnett
(1984), 9 Ohio St.3d 47, 49, 9 OBR 165, 458 N.E.2d 834. However, federal law applies and controls the decision as to whether an obligation for a debt will be considered as alimony, maintenance or support. Id.
 {¶ 11} The question we must resolve is whether a spouse may challenge the dischargeability of a debt which is allegedly in the nature of a support obligation in state court after the debtor's debts have been discharged in a bankruptcy proceeding. Two Ohio courts have previously been faced with this issue. In Clemons v. Clemons (July 13, 1993), 10th Dist. No. 92AP-1196, the parties were divorced and the husband was ordered to continue paying the debts of the parties contained in a trusteeship which he had established. Subsequently, the husband ceased making his payments to the trusteeship and filed for bankruptcy. The wife was listed as a creditor having unsecured claims without priority. She received notice of the bankruptcy proceedings and attended the bankruptcy hearing. After the husband's debts were discharged in bankruptcy, the wife moved for Civ.R. 60(B) relief from judgment, asking for an increase in the amount of spousal support so she could then use that money to pay the marital debts of the parties. The trial court granted that motion.
 {¶ 12} On appeal, the husband argued the trial court could not grant the wife the relief she asked for since he was discharged from those debts and an increase in spousal support so the wife could pay those debts would violate the terms of his discharge in bankruptcy. The wife argued the trial court's original order that he pay the marital debts was in the nature of support and, therefore, was not dischargeable. He claimed she waived that argument by failing to challenge the dischargeability of the debt during the bankruptcy proceedings.
 {¶ 13} The husband first argued that his discharge in bankruptcy explicitly found he was discharged from paying the joint marital debts. The Tenth District disagreed.
 {¶ 14} "A general discharge [in bankruptcy] discharges all dischargeable debts. The question of whether or not a certain debt is discharged is normally not ruled on until specifically raised. Thus, we find that the bankruptcy court did not rule that appellant's obligation to pay the trusteeship debt under the divorce decree was not in the nature of alimony and, therefore, dischargeable in bankruptcy." Id. at 2.
 {¶ 15} The husband then argued the issue was res judicata since the wife did not raise it when she appeared at the bankruptcy proceedings. The appellate court rejected that argument as well, noting there is no requirement that the wife had to bring that issue up at the time and that federal and state courts have concurrent jurisdiction over the issue. Id. at 3.
 {¶ 16} This same reasoning is echoed in Asad v. Asad (Dec. 13, 2001), 8th Dist. No. 79258. In Asad, the divorce decree ordered that the husband pay the wife's attorney fees. Before he paid those fees, he filed for bankruptcy. The wife did not challenge that filing and the bankruptcy court granted William's bankruptcy, including relief from his obligation to pay those attorney fees. Subsequently, the wife also filed for bankruptcy and was relieved of her obligation to pay those attorney fees. Sometime later, the husband moved for a modification of spousal support due to a change in circumstances. The trial court denied that motion, finding there was not a big enough change in circumstances since the divorce to warrant a modification. The trial court also found the husband was in arrears since he had failed to pay the wife's attorney fees.
 {¶ 17} On appeal, the husband argued the trial court was in error because his obligation to pay those attorney fees was discharged in bankruptcy and the wife's failure to challenge his filing for relief from that debt results in an automatic discharge of the debt. The Eighth District disagreed. As it pointed out, some debts are automatically discharged in bankruptcy unless the creditor challenges the debt's dischargeability during the bankruptcy proceedings. Thus, a creditor which does not challenge these kinds of debts waives its ability to challenge them at a later date. However, debts under11 U.S.C. § 523(a)(5) are not automatically discharged. Therefore, the bankruptcy code contemplates that the dischargeability of these kinds of debts can be challenged outside the bankruptcy proceedings. "`In such instances, state courts have concurrent jurisdiction with bankruptcy courts to determine the dischargeability of an alleged support obligation.'" Id. at 3, quoting Toth v. Toth (Dec. 12, 1996), 8th Dist. No. 69994.
 {¶ 18} Many other Ohio courts have also made post-bankruptcy determinations that a debt was nondischargeable, although they did not specifically address whether they had jurisdiction to do so. See Vaughanv. Vaughan (1998), 131 Ohio App.3d 364, 722 N.E.2d 578; Ballinger v.Ballinger (1995), 107 Ohio App.3d 358, 668 N.E.2d 979; Rizzen v. Spaman
(1995), 106 Ohio App.3d 95, 665 N.E.2d 283; Snyder v. Snyder (1995),105 Ohio App.3d 69, 663 N.E.2d 695; In re Dissolution of Marriage ofCoplin (1995), 102 Ohio App.3d 212, 656 N.E.2d 1338; Dozer v. Dozer
(1993), 88 Ohio App.3d 296, 623 N.E.2d 1272; Pearl v. Pearl (1990),69 Ohio App.3d 173, 590 N.E.2d 315. These cases are in accord with the decisions of both state and federal courts which have all held that when dischargeability of a marital debt is not raised in bankruptcy court, then it is an issue which may be ruled on by a court with concurrent jurisdiction after the discharge in bankruptcy. See In re Ball (E.D.Ark. 1995), 181 B.R. 384; Collins v. Collins (1993), 208 Ga. App. 862,432 S.E.2d 605; Jordan v. Jordan (Ct.App. 1990), 166 Ariz. 408,803 P.2d 129; State ex rel. Austin v. Austin (1986), 221 Mont. 488,719 P.2d 429; Pellitteri v. Pelliteri (Ct.App. 1985), 127 Wis.2d 559,378 N.W.2d 295; In re Littlefield (D.Maine 1982), 17 B.R. 549.
 {¶ 19} In this case, both the magistrate and the trial court based their decisions upon "the logic and reasoning used by the Ohio Supreme Court in Barnett v. Barnett, 9 OBR 165, 9 Ost3d (sic) 47 (1984) in conjunction with the well established priority rule for exercising concurrent jurisdiction." However, Barnett is clearly distinguishable from this case. In Barnett, the husband filed for bankruptcy following the parties' divorce. As part of the divorce decree, he was ordered to pay all the parties' marital debts. While the bankruptcy proceeding was pending, the wife moved for the trial court to find the husband in contempt for his failure to pay those marital debts. The husband objected to this due to the automatic stay imposed by bankruptcy law. The trial court denied the motion for contempt "until such time as the bankruptcy court ruled whether the debts were dischargeable in bankruptcy." Id. at 48. The appellate court reversed this decision, finding the automatic stay provisions of the bankruptcy code violated the Tenth Amendment insofar as it stayed the contempt proceedings.
 {¶ 20} The Ohio Supreme Court found the automatic stay provisions of bankruptcy law did not violate the Tenth Amendment. However, it first noted the nature of the debt which the wife was seeking to enforce. The court noted it was undisputed that the debt was "a debt that was not excepted to discharge in bankruptcy under Section 523, Title 11, U.S.Code; and that the enforcement proceeding of the court of common pleas was subject to the automatic stay provisions of Section 362(a), and not excepted under Section 362(b)." Id. at 49. Thus, Barnett did not address whether the provisions of the automatic stay and, by analogy, those dealing with the final discharge in bankruptcy prevent a state court from addressing the dischargeability of the debt pursuant to11 U.S.C. § 523(a)(5). Accordingly, its reasoning cannot control how we resolve this issue.
 {¶ 21} In addition, both the trial court and Gary rely upon the jurisdictional priority rule when arguing that Vicki waived the issue by not raising it in bankruptcy court. That rule provides that between courts of concurrent jurisdiction, the court who first acquires jurisdiction over an action acquires jurisdiction, to the exclusion of all tribunals, to adjudicate upon the whole action and to settle the rights of the parties. State ex rel. Dannaher v. Crawford (1997),78 Ohio St.3d 391, 393, 678 N.E.2d 549; John Weenink Sons Co. v.Court of Common Pleas of Cuyahoga County (1948), 150 Ohio St. 349, 355, 38 O.O. 189, 82 N.E.2d 730. However, the Ohio Supreme Court has said this rule only applies to state courts. Dannaher at 393. This is because the Ohio Supreme Court has required that the courts have concurrent and coextensive jurisdiction before this rule is invoked. John Weenink Sons at 355.
 {¶ 22} Here, the bankruptcy court and the domestic court do not exercise concurrent and coextensive jurisdiction and they are not both state courts. When determining whether Gary's obligation to pay the marital debt was in the nature of spousal support, the trial court is not acquiring jurisdiction over Gary's bankruptcy action. Instead, it is merely exercising its jurisdiction over this divorce action. The courts have concurrent jurisdiction over the issue, not the action and, for the reasons stated above, Vicki's failure to raise the issue in bankruptcy court is not res judicata.
 {¶ 23} Finally, Gary cites Stokes v. Stokes, 7th Dist. No. 99 BA 27, 2002-Ohio-5238, for the proposition that federal courts have the authority to determine whether something is support or property division in a bankruptcy case, thus, trying to give the impression that state courts do not have that authority. While we did say that federal courts have the authority to make that determination, Gary takes that language out of context. In Stokes, the trial court ordered the husband to pay the parties' marital debts when it divided the couple's assets and liabilities. It then labeled those debts as spousal support. We criticized the trial court's apparent attempt to shield the debt from bankruptcy by labeling it as spousal support. "If it were true spousal support, then it would not be a debt previously allocated to him with interest payable on it." Id. at ¶ 12. When making our reference to the federal courts, we were merely emphasizing that "[t]he label given to a particular obligation in a separation agreement or divorce decree is not dispositive of the nature of the obligation" and that federal law controls any determination on the nature of the obligation. Ballinger v.Ballinger (1995), 107 Ohio App.3d 358, 362, 668 N.E.2d 979, citing In reSwiczkowski (N.D.Ohio. 1988), 84 B.R. 487, 489. Thus, Gary's reliance upon our statement in Stokes is misplaced.
 {¶ 24} Fundamentally, both the trial court's judgment and Gary's argument ignore one of the basic principles of bankruptcy law, the difference between debts that are automatically discharged and those that are not. The main difference between these kinds of debt is that for a creditor to challenge those that are automatically dischargeable, the creditor must challenge the dischargeability of the debt at the bankruptcy proceedings. If we were to hold that Vicki had waived her ability to challenge the dischargeability of the marital debt since she did not appear at the bankruptcy proceedings, we could be transforming a debt that is in the nature of spousal support from one which was not automatically dischageable to one that is. As this is contrary to the bankruptcy code, we will not so hold.
 {¶ 25} In light of the forgoing, we conclude that Vicki's failure to appear at the bankruptcy proceedings did not waive her ability to challenge the dischargeability of the marital debts in a subsequent proceeding in domestic court and Gary's general discharge does not act as res judicata upon the domestic court's decision. The trial court's decision to the contrary is error and Vicki's sole assignment of error is meritorious. The trial court's decision is reversed and this case is remanded for further proceedings.
Waite, P.J., and Donofrio, J., concur.